Billie Frances HARRIS, Appellant,

v.

John B. HARRIS, Appellee.

No. 5841.

Court of Civil Appeals of Texas,
Waco.

March 9, 1978.

Rehearing Denied March 23, 1978.

James E. Crouch, Hamilton, John E. Agnew, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

W. V. Dunnam, Jr., Dunnam, Dunnam & Dunnam, Waco, for appellee.

HALL, Justice.

This is an appeal by the wife in a divorce action. After a hearing by the court without a jury judgment was rendered awarding appellee-husband the divorce, appointing him managing conservator of the parties' 15-year-old son and according appellant-wife visitation rights, and dividing the parties' property. All questions raised on this appeal are related to the property division. We affirm the judgment.

The following uncontradicted facts are pertinent to our discussion. Appellee is a banker, rancher and real estate dealer. Appellant also deals in real estate. They were formally married on June 27, 1955. A daughter, who is now an adult, and their minor son, were adopted by them during this marriage. Their home was in Hamilton, Texas. That marriage ended in divorce on October 30, 1969. Appellant married Dr. Don L. McCord, also of Hamilton, in August, 1970, in a formal ceremony. That marriage ended in divorce in March, 1971. In January, 1971, while appellant's divorce action against Dr. McCord was pending, she and appellee began living together with their children at appellee's ranch home outside Hamilton. They continued living together without benefit of formal marriage after appellant's divorce from Dr. McCord until June 20, 1975. On that day appellant and appellee were again formally married. Between March, 1971, and June, 1975, substantial properties were acquired by both parties. Appellee filed this suit for divorce in June, 1976. The judgment in question was rendered on August 25, 1977.

It was appellant's contentions in the case that the parties' relationship during their living together from the time of her divorce from McCord in March, 1971, until the time of their ceremonial marriage in June, 1975, was one of informal (common law) marriage, and that, accordingly, the properties acquired by them during this period was community property.

V.T.C.A., Family Code § 1.91 provides in pertinent part that an informal marriage may be proved by evidence that the parties "agreed to be married," and thereafter lived together as husband and wife and represented to others that they were married. The court expressly found that until the formal marriage in June, 1975, appellant and appellee did not agree to be married. Appellant asserts this finding is against the great weight and preponderance of the evidence. This contention is overruled.

On the trial appellant took the position that she and appellee intended to and did enter into an informal marriage when her divorce from Dr. McCord became final in March, 1971. She testified that in 1971 "and after that" appellee told her "he always had felt he was married to me," that he introduced her in the community as his wife, that they held themselves out as husband and wife, and that they "were married." The formal marriage in 1975 was performed in Dallas. Her explanation for this marriage was that it was performed on the 20th anniversary of their 1955 marriage and "we wanted to do it." They did not give advance notice of this marriage to any friends, their children, or other relatives. In a deed conveying four acres to appellant in September, 1971, appellee stated that he was "not joined herein by my wife, she being Grantee herein, and for the further reason that the property herein conveyed is no part of the homestead of Grantor and Grantee." In 1973, appellant and appellee made a trip to the Orient with a large group of other Texas bankers and their spouses. On the trip they represented themselves as husband and wife.

In the 1969 divorce decree between the parties, appellee was ordered to pay appellant $450.00 per month child support for the children. He continued making these payments after the parties began living together in January, 1971, until October, 1971, at which time appellant agreed he should quit because he was contributing more than the required payments toward the children's support. Appellee testified that he never agreed to marry appellant until the time of the formal marriage in 1975; that from time to time appellant "would bring up the subject that we should get married" but he disagreed; that he never expressed to appellant that they were married and "we never agreed to get married until we did [in 1975]." In 1973, soon after appellant returned from a stay of two months alone in Waco, Texas, appellant wrote a four page letter to appellee in which she classed their relationship as one of "just friends." In the letter she said, "I'll be your friend to whatever extent friendship can go without hope of loving . . . You have no responsibility to me, owe me no loyalty or trust, no support, moral or material. I don't feel any anger toward you on this basis. I can be friendly." For the years 1971, 1972, 1973, and 1974, appellant showed her filing status on her income tax returns as "Single" and "Unmarried Head of Household." After the marriage ceremony in 1975, she filed her returns as "Married, filing separately."

There is other evidence bearing upon the parties' attitudes toward their marital status during the years in question. Included in the evidence we have set forth is the showing of their practice prior to 1971 to effect decisions to marry by resorting to formal ceremonies. In the light of the whole record, the court's finding that the parties did not agree to marry until their formal marriage in June, 1975, is not against the great weight and preponderance of the evidence.

When appellant separated from Dr. McCord, she and the children moved in with appellee at his ranch home situated on a 109-acre tract outside the City of Hamilton. In January, 1972, appellee executed a deed to appellant which on its face purported to convey all 109 acres of the homeplace. On the trial appellee asserted it was the inten-

tion of the parties that the deed convey only one-half of the tract rather than all of it. He sought reformation of the deed on the ground of mutual mistake. The trial court expressly found that when the deed was executed the parties believed it conveyed only an undivided one-half interest in the tract; that the parties were mutually mistaken as to the actual conveyance set forth in the deed; and that this mistake resulted from the failure of the scrivener to include the words "an undivided one-half" the tract in the granting clause. Upon those findings, the court granted appellee's. plea for reformation. Appellant contends the evidence is legally and factually insufficient to support the findings. We disagree.

The evidence shows that after appellant moved to appellee's home, they determined to make substantial improvements to the house and grounds. They agreed that appellant's separate funds would be used to pay a portion of the expense of the improvements, but appellee insisted that in exchange for this he should convey appellant an undivided one-half interest in the place. They then determined that the value of the 109 acres was $75,000.00 and that in consideration of the one-half interest in the tract appellant would loan appellee $25,000.00, give him $1,100.00 cash, transfer to him certain bank stock worth $5,700.00, and cancel debts he owed her which amounted to $5,700.00, for a total consideration of $37,500.00. The record before us contains a sheet of paper upon which appellant set forth those calculations in longhand and wrote beside them that they were for "½ int. 109 acres & House." After the parties reached this agreement, appellee instructed his attorney to prepare a deed conveying appellant the one-half interest. Testifying, the attorney acknowledged those instructions and admitted that either he or his secretary simply and mistakenly failed to include the phrase "an undivided one-half interest" in the granting clause of the deed. Appellee testified he did not read the deed before he executed it, but that he believed it conveyed only a one-half interest. Within a few days after its execution the deed was delivered to appellant. She testified it was the parties' intention that the deed convey the whole tract. However, in financial statements made by her for bank credit purposes after the conveyance, she consistently listed a one-half ownership in the 109 acres. Appellee testified that when he and appellant determined to separate in 1976 she told him that he would have to move and that he had "inadvertently deeded her the whole thing."

■ The evidence we have recited is legally sufficient to support the findings upon which the court ordered reformation of the deed. Considering the whole record, it is our view and holding that the evidence is also factually sufficient to support the findings.

■ In April, 1977, appellee and a person named Bob Colin purchased 937 acres in Brown County, Texas for a total consideration of $515,000.00. They each paid $82,500.00 as down payment, and the balance of $350,000.00 was secured by liens on the property. Appellant asserts the court erred in failing to consider this property in dividing the parties' community estate. The record does not support this assignment of error, and it is overruled. The court based its property division on express findings that certain properties (including the 937-acre Brown County tract) was the "only community property" in the name or possession of appellee; that certain other properties were the "only community property" in the name or possession of appellant; and that "considering the indebtedness against said properties, the total community indebtedness upon which [appellee] is presently obligated" (and other equities between the parties which we need not detail), "a fair, just and equitable division of the community estate of the parties would be the setting aside to and vesting of title in [appellee] to all of the above-described property in his name or possession subject to the indebtedness against same, and the setting aside to and vesting of title in [appellant] of the property presently held in her name or possession subject to the indebtedness against same."

Appellant brings forward other points and contentions. Some are rendered imma-

terial by our holdings set forth above. The others are without merit. All are overruled.

The judgment is affirmed.